THE CITY OF ST. LOUIS v. SPIEGEL, *Appellant.*

Constitution : CITY OF ST. LOUIS : CITY ORDINANCE : LICENSING MEAT SHOPS : DISCRIMINATION.   An ordinance of the city of St. Louis relating to licensing and regulating meat shops, required a license tax of fifty dollars of all owners of such shops, and also provided that the owners of the shops in the new city limits could sell both at their shops and on their wagons, while the owners of such shops in the

old city limits could make their sales only at their shops ; *held*, that the ordinance discriminated against the latter class and was, therefore, unconstitutional.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*J. C. McGinnis* and *L. A. Steber* for appellant.

(1) The power to "license and regulate" is a police power for the purpose of regulation only, and cannot be used for the purpose of obtaining revenue, or as a basis for taxation. If the ordinances passed in pursuance of this authority are, in effect, revenue measures, they are illegal. *City of St. Louis v. Boatmen's Insurance Co.*, 47 Mo. 150 ; *City of St. Louis v. Laughlin*, 49 Mo. 559, 564 ; *Express Company v. City of St. Joseph*, 66 Mo. 675, 680 ; *State v. New Brunswick*, 43 N. J. Law, 175 ; *Muhlenbrinck v. Commissioners*, 42 N. J. Law, 346 ; *Railroad v. Hoboken*, 41 N. J. Law, 71, and cas. cit. ; *State v. Mayor*, 33 N. J. Law, 280 ; *City of Brooklyn v. Nodine*, 33 N. Y. 512 ; Dill. on Mun. Corp. [3 Ed.] secs. 358, 768 ; *In re Wan Yin.* 22 Fed. Rep. 701 ; *City of St. Paul v. Traeger*, 25 Minn. 248, 251 ; *City of Mankato v. Fowler*, 32 Minn. 364 ; *Vansant v. Harlem Stage Co.*, 59 Md. 330. (2) The doctrine of *ejusdem generis*, by which it is sought to maintain the power to tax meat shops, does not apply to this case. The concluding paragraph of the charter provisions to "license, tax, regulate and suppress," is confined to occupations, etc., "not heretofore enumerated." Meat shops being enumerated are, therefore, clearly excluded from the power to tax, and we need not resort to the rule of *ejusdem generis* to see if, by any inference, they come within the generic class of other occupations mentioned. *Expressio unius exclusio alterius.* *City of St. Paul v. Traeger*, 25 Minn. 248. (3) The city charter does not authorize the

taxation of the occupation of a meat shop man. The power of taxation, when vested in a municipal corporation, must appear in plain and express terms, or it cannot be assumed. *City of St. Louis v. Laughlin*, 49 Mo. 559, 566; *City of St. Louis v. Boatmen's Insurance Co.*, 47 Mo. 153 ; *City of St. Louis v. Sternberg*, 66 Mo. 289, 296 ; Cooley on Const. Lim. 201; Dill. on Mun. Corp. [3 Ed.] secs. 89, 91, 763 ; Wood on Nuis. [2 Ed.] 820 ; Burroughs on Tax. sec. 128 ; *Mays v. Cincinnati*, 1 McCook (Ohio), 268, 273 ; *City of St. Paul v. Traeger*, 25 Minn. 248, 251 ; *City of Mankato v. Fowler*, 32 Minn. 364 ; *Vansant v. Harlem Stage Co.*, 59 Md. 330 ; *Delcambre v. Clere*, 34 La. Ann. 1050. Otherwise, they will be treated as denied. Wood on Nuis. [2 Ed.] 820, note 2. "And any doubt or ambiguity arising, with reference thereto, must be resolved in favor of the public." *Clark v. Davenport*, 14 Iowa, 494, 500 ; *State to use v. Smith*, 31 Iowa, 493, 496; *City of St. Paul v. Stultz*, 7 Am. & Eng. Corp. Cases, 668; s. c., 33 Minn. 233 ; *Vansant v. Harlem Stage Co.*, 59 Md. 330, 333-334. (4) The amount of fifty dollars fixed as the license fee in the ordinance is, in effect, a tax, and as such is not authorized by the charter. A license fee beyond the reasonable fee for issuing the licenses imposed, under such circumstances, and of inspecting and regulating the business, is taxation for revenue purposes, and is not the legitimate exercise of the power of licensing under the authority given to a city for police purposes. *City of St. Louis v. Boatmen's Insurance Co.*, 47 Mo. 150; *Railroad v. Hoboken*, 41 N. J. Law (12 Vroom) 71, 82 ; *Mayor v. Railroad*, 32 N. Y. 261 ; *City of Burlington v. Putnam Insurance Co.*, 31 Iowa, 102, 105-6; *In re Wan Yin*, 22 Fed. Rep. 701 ; Cooley on Const. Lim. *201; *City of St. Paul v. Traeger*, 25 Minn. 248, 251 ; *City of Mankato v. Fowler*, 32 Minn. 364 ; *Vansant v. Harlem Stage Co.*, 59 Md. 330. (5) Evidence is admissible to demonstrate that an ordinance is unreasonable, oppressive, etc.

*Corrigan v. Gage*, 68 Mo. 541; *Clason v. Milwaukee*, 30 Wis. 316. (6) If the city has power to tax meat shops, the tax must be uniform upon the same class of subjects within the territorial limits of the city. Mo. State Const., art. 10, sec. 3; *City v. Spiegel*, 75 Mo. 145. Courts will prevent any exercise of partial legislation. *Mayor v. Althrop*, 5 Cold. (Tenn.) 555. The city has no power to provide taxing districts. *State v. Comptroller*, 44 N. J. Law, 572. A court will look behind or beyond the mere words of the statute, however chosen or arranged, to see if, in its actual operation, it must necessarily result in discrimination. *Ex parte Hanson*, 28 Fed. Rep. 126, 129.

*Leverett Bell* for respondent.

(1) The power is given by the city charter to impose a license tax on the occupation of keeping a meat shop, and the ordinance provisions are valid. *St. Louis v. Spiegel*, 8 Mo. App. 478; s. c., 75 Mo. 145. (2) The feature in section one, of the existing ordinance, permitting the owners of meat shops to sell meat from their wagons in the new limits of the city, is a proper regulation of the business, and one entirely competent for the assembly to make. The fact that the ordinance does not, in terms, embrace persons selling meat in the markets of the city, affords no ground for holding the ordinance invalid. The Supreme Court, in *St. Louis v. Jackson*, 25 Mo. 37, held that the city had power to forbid the sale of fresh meat in less quantities than one quarter, except in a butcher's stall in a market. And in *St. Louis v. Weber*, 44 Mo. 547, the same court held that a meat shop ordinance that exempted from its operation the lessee of a butcher's stall in a market, was a valid exercise of power by the city.

SHERWOOD, J.— The defendant was prosecuted in

the first district police court of St. Louis, for violating sections 1 and 4, of article 3, of chapter 23, of the revised ordinances of the city, approved March 29, 1881, as amended by ordinance 12,508, approved July 21, 1883, by keeping a meat shop without a license. The case was tried in the police court on November 6, 1883, and the defendant was found guilty and adjudged to pay a fine of fifty dollars and costs. He appealed to the St. Louis court of criminal correction, where the case was tried anew and the defendant was discharged. The city appealed to the St. Louis court of appeals, where judgment was rendered in its favor. 16 Mo. App. 210. The case is here by appeal.

On a former occasion, when the defendant was prosecuted under ordinance 10,384, known as the meat shop ordinance, for a violation thereof, and appealed to this court, we held that the license fee was a tax within the meaning of section 3, article 10, of our state constitution ; a section which provides that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." And because that ordinance imposed a tax of twenty-five dollars on meat shops in one portion of the city, and a tax of one hundred dollars on meat shops in another portion of the city, we held that the ordinance discriminated in favor of one class of meat shops and against the other, and was, therefore, obnoxious to the constitutional provisions above noted. The sections 1 and 4 of ordinance 12,508, under the provisions of which the defendant was convicted, are as follows :

"Section. 1. No person, persons, or co-partnership of persons shall open or keep a meat shop in the city of St. Louis, without having first obtained, from the collector, a license therefor, and any person, persons, or co-partnership of persons doing business as a meat shop keeper or keepers, shall pay an annual license of fifty dollars in advance, which license shall authorize and empower

such person, persons, or co-partnership of persons, to sell in their shops all kinds of fresh and salt meats, fresh and salt fish, sausage and sausage meat, whether made by them or not, and also all kinds of fowls and game, in their proper seasons, that is not prohibited being sold or offered for sale, by any ordinance of this city, or law of this state, all kinds of vegetables and fruit, in large or small quantities, for one year from the date of such license, and it is hereby provided that the owners of meat shops, who have paid their license, may be permitted to *deliver* meat in a wagon, or otherwise, without taking out an additional license therefor, [and *in the new limits* added to the city by the charter, *such owners* of meat shops may send out their wagons to sell meats in such new limits.] It is hereby provided that if any person, persons, or co-partnership of persons, shall exhibit for sale, or offer for sale, any of the above enumerated articles, vegetables and fruit excepted, in any stall, place, shop, or wagon in this city, whether sold or not, such person, persons, or co-partnership of persons, shall be considered to be meat shop keepers, as herein defined, and shall be adjudged to be such in the full meaning of this section, and provided further, that nothing in this section shall be so construed as to include grocers who sell ham, shoulders, dried beef, bacon, salt fish and smoked sausages."

"Sec. 4. Any keeper of a meat shop who shall fail, first to obtain any license therefor, or shall fail to keep said license and all transfers thereof posted up in his shop, or shall open said shop, or sell therein, any article on a Sunday after nine o'clock, *a. m.*, shall be deemed guilty of a misdemeanor, and on conviction thereof, be fined not less than twenty-five, nor more than one hundred dollars, for each and every such offense."

It is a stipulated fact in this case, that the establishment of the defendant is within the "old limits" of the city. Does the ordinance in question discriminate against those whose meat shops are in the "old limits,"

and in favor of those whose shops are in the "new limits?" There is no room to base a doubt upon, that this is precisely what the ordinance does. It is quite too plain for argument or lengthened discussion that, under its terms, meat shop keepers in the "new limits," may, in addition to selling meat in their shops, "send out their wagons to sell meat in such new limits." In order to make this conspicuous fact more conspicuously appear, I have, with brackets, on the face of section 1 of the ordinance *fenced in* the owners of meat shops in the "new limits," as well as their privileges, to themselves. Under the provisions of that section, an owner of a meat shop in the "new limits," may, for the consideration of fifty dollars, not only sell meat in his *stationary* meat shop, but may also sell meat in the "new limits" from his *ambulatory meat shop on wheels*, while the owner of a meat shop in the "old limits," though paying the same amount of license tax, has to content himself with making his sales at one place. If this is not discrimination, what is it?

The judgment of the court of appeals is reversed and that of the court of criminal correction affirmed. All concur.