THE CITY OF ST. LOUIS v. FREIVOGEL, *Appellant.*

1. **St. Louis City Charter :** POWER TO TAX MEAT-SHOP KEEPERS. The city of St. Louis, under a provision of its charter authorizing it " to license, tax, and regulate grocers, merchants, retailers \* \* \* and all other business, trades, avocations, or professions whatever," has the power to tax meat-shop keepers.

2. ——— : ———. An ordinance of the city of St. Louis licensing meat-shop keepers considered and held valid against the objection that it contained discriminations rendering it invalid and classified butchers as meat-shop keepers.

*Appeal from St. Louis Court of Criminal Correction.*
HON. E. A. NOONAN, Judge.

AFFIRMED.

*L. A. Steber* and *B. F. Clark* for appellant.

(1) The power to license and regulate is a police power for the purpose of regulation only, and cannot be used for the purpose of obtaining revenue or as a basis of taxation. *City v. Ins. Co.,* 47 Mo. 150 ; *City v. Laughlin,* 49 Mo. 559 ; *Ins. Co. v. City,* 66 Mo. 675. (2) The city charter of St. Louis does not authorize the taxation of a meat-shopman or butcher. (3) The amount of fifty dollars fixed in the "license fee" in the city ordinance is in effect a tax and as such is not authorized by the charter. (4) The doctrine of *ejusdem generis* by which it is sought to maintain the power to tax meat-shop keepers and marketmen or butchers does not apply in this case. (5) Evidence is admissible to show that an ordinance is unreasonable and oppressive. *Corrigan v. Gage,* 68 Mo. 541 ; *Clason v. Milwaukee,* 30 Wis. 316. (6) If the city has power to tax meatshops and butchers or marketmen ( whom the ordinance herein

places in the same class ), the tax must be uniform upon the same class of subjects within the territorial limits of the city. Const. Mo., art. 10, sec. 3; *City v. Spiegel*, 75 Mo. 145. Even if the amount of the tax is the same, there must be no discrimination in the value of the privileges conferred. *City v. Spiegel*, 90 Mo. 587. Courts will prevent the exercise of any special legislation. *Mayor v. Althrop*, 5 Cold. (Tenn.) 555. A court will look behind or beyond the mere words of a statute, however chosen or arranged, to see if, in its actual operation, it must necessarily result in discrimination. *Ex parte Hanson*, 28 Fed. Rep. 127. (7) No discrimination can be made in favor of a grocer, who only deals in certain kinds of meats, or at certain times of the year. *Eastman v. Jackson*, 74 Tenn. 162. (8) No city ordinance can be made to define English words, nor by it can a "butcher" be made to be a "meat-shop keeper." *Mayor v. Cincinnati*, 1 Ohio St. 268, 272; *State v. Yearby*, 82 N. C. 561; *State v. West*, 34 Mo. 424. The city charter itself makes the distinction by enumerating both "market-places" and "meatshops." *City v. Traeger*, 25 Minn. 248, 253, 255. (9) There is further discrimination in permitting the meat-shop keeper to deliver meat in a wagon without taking out an additional license therefor (*i. e.*, license for the wagon). No exemption from payment of wagon license is granted to the person who sells in a market. No exemption is made in favor of all other persons in the city who are required to pay a vehicle license tax. (10) There is discrimination between the privileges accorded to the vendor in the market and the one in the meatshop. *City v. Spiegel*, 90 Mo. 587; *Mayor v. Althrop*, 5 Cold. (Tenn.) 554; Cooley on Const. Lim., *390-91.

*Leverett Bell* for respondent.

The objections made to the ordinance are untenable and the judgment below should be affirmed. *St. Louis*

*v. Spiegel,* 75 Mo. 145 ; s. c., 90 Mo. 587 ; *St. Louis v. Herthel,* 88 Mo. 128.

NORTON, C. J.—An ordinance of the city of St. Louis contains the following section : "Sec. 889. No person, persons, or copartnership of persons, shall open or keep a meatshop in the city of Saint Louis, without having first obtained from the collector a license therefor, and any person, persons, or copartnership of persons, doing business as a meat-shop keeper or keepers, shall pay an annual license of fifty dollars in advance, which license shall authorize and empower such person, persons, or copartnership of persons, to sell in their shops all kinds of fresh and salt meats, fresh and salt fish, sausage and sausage-meat, whether made by them or not, and also all kinds of fowl and game in their proper seasons that is not prohibited being sold or offered for sale by any ordinance of this city or law of this state, all kinds of vegetables and fruit, in large or small quantities, for one year from the date of such license, and it is hereby provided that the owners of meatshops, who have paid their license, may be permitted to deliver meat in a wagon or otherwise, without taking out an additional license therefor.˙ It is hereby provided that if any person, persons, or copartnership of persons, shall exhibit for sale or offer for sale any of the above-enumerated articles, vegetables and fruit excepted, in any market, stall, place, or shop in this city, whether sold or not, such person, persons, or copartnership of persons, shall be considered to be. meat-shop keepers, as herein defined, and shall be adjudged to be such in the full meaning of this section, and provided further, that nothing in this section.shall be so construed as to include grocers who sell ham, shoulders, dried beef, bacon, salt fish, and smoked sausages."

It appears from the record that defendant sold meat

in the Union Market in St. Louis, having rented a stall in said market for the purpose of selling meat thereat. He was arrested for conducting said business without first having taken out a license as required by the above ordinance, was convicted in the police court and fined fifty dollars, and on his appeal to the court of criminal correction was again convicted and fined, from which he has appealed to this court, and the first point made by counsel on the appeal is, that while, under the charter of the city, the municipal assembly had the power to license and regulate meatshops, it had no power to tax them. The second point made is, that if the assembly was empowered by the charter to tax meat-shop keepers, that the tax imposed is invalid, because of discrimination, and because it is not uniform.

As to the points made under the first ground of objection, viz., that the charter conferred no power to impose such a tax, it may be said that they are identical with those made in the cases of *City of St. Louis v. Spiegel*, reported in 75 Mo. 145 and 90 Mo. 587. The ordinance, the validity of which was challenged in the cases above cited, as to the question whether the power to tax was given by the charter, is in its essential features bearing on that question like the one in the present case. (See *City of St. Joseph v. Ernst, ante*, p. 360). Spiegel was convicted for selling meat as a meat-shop keeper without taking out a license, and on appeal to the St. Louis court of appeals, the judgment was affirmed (8 Mo. App. 478) ; the court in its opinion holding that the charter of the city gives the power to license and tax meatshops, and on that branch of the case it is said : "The charter * * * gives power to the municipal authorities (art. 3, sec. 6) 'to assess, levy, and collect all taxes for general and special purposes on real and personal property, and licenses; * * * to establish market-places and meatshops, and license, regulate, sell, lease, abolish, or otherwise dispose of, the

The City of St. Louis v. Freivogel.

same; * * * to license, tax, and regulate grocers, merchants, retailers, * * * and all other business, trades, avocations, or professions whatsoever; * * * to license, tax, regulate, or suppress all occupations, professions, and trades not enumerated, of whatever name or character.' These provisions give the right to license meatshops as plainly as can be given. It is said in so many words in the charter that the 'mayor and assembly shall have power within the city to license meatshops.' The right to tax them is also plainly given, since the city has the power to license and tax grocers, merchants, and retailers, and all trades and avocations whatsoever. If the keepers of meatshops are not *ejusdem generis* with 'grocers, merchants, and retailers,' then the meaning of these three words must be restricted altogether to grocers, that being the only kind of retail merchants especially named under this subdivision of the fifth section. The business of a meat-shopman as prescribed in the ordinance is to retail meat, game, and vegetables. He is certainly a retailer, and his retail business is certainly akin to that of a grocer. We have no doubt that the charter, by a fair construction of the language used, gives the power to license and tax those keeping meatshops."

While it was held in the case above quoted from that the power to tax meatshops was given by the charter, it was further held that the license tax when imposed need not be uniform in the city. On said cause being appealed to this court, the judgment of the St. Louis court of appeals was reversed on the sole ground that the license tax when imposed must be uniform, under section three, article ten of the constitution, which provides that " taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and that, inasmuch as the tax imposed was not uniform in this, that it imposed a license tax of one hundred dollars on meat-shop keepers in one part

of the city, and twenty-five dollars on meat-shop keepers in another part of the city, the ordinance imposing it was held to be invalid. The ordinance was amended in conformity with the ruling of this court, so as to make the tax uniform throughout the city, and Spiegel was again arrested for selling meat without license as a meat-shop keeper, and being convicted and fined by the court of criminal correction, he appealed to the St. Louis court of appeals, which affirmed the judgment of the court of criminal correction; he thereupon appealed to this court, and the judgment of the St. Louis court of appeals was reversed on the ground that, as the ordinance provided that the owners of meatshops in the new city limits could sell both at their shops and from wagons, while the owners of meatshops in the old city limits could only sell at their shops, this discrimination rendered the ordinance invalid. *City of St. Louis v. Spiegel*, 90 Mo. 587. No doubt is expressed in either of these cases by this court as to the power under the charter to impose the tax, and that question, we think, was properly disposed of by the St. Louis court of appeals in the opinion in 8 Mo. App., *supra*, and from which we have quoted herein. The ordinance now appears before us for the third time, with the discriminating provision fatal to its validity under our ruling in 90 Mo., *supra*, stricken out.

Considering the question of the power to tax meat-shop keepers under the charter as having been settled by the adjudications hereinbefore referred to, the only remaining question left for determination is as to whether the ordinance makes such discrimination as to render it invalid, and on this branch of the case it is insisted by counsel that it discriminates in favor of grocers; that it undertakes to classify butchers as meat-shop keepers; that it also discriminates in allowing a meat-shop keeper to deliver meat from an unlicensed wagon without giving this privilege to one who sells

meat at a stall in a market-house, and also discriminates by permitting a meat-shop keeper to sell vegetables and fruit, and refusing the privilege to one who is selling meat in a market-house. As the articles mentioned in the ordinance as being sold by grocers may be understood as making up in part a grocer's stock which he may sell under a grocer's or merchant's license, the provision of the ordinance exempting him from taking out license as a meat-shop keeper in order to sell what he may properly sell under a grocer's or merchant's license, cannot be said to be a discrimination in his favor. As to the second point it may be said that there is nothing in the ordinance from which an inference can be drawn that it classifies, or attempts to classify, butchers as meat-shop keepers. As to the third point, it is a sufficient answer to say that there is nothing in the ordinance which forbids a person who sells meat in a market-house from delivering his meat in a wagon without taking out an additional license therefor. The exemption applies as well to one who sells meat inside the market as to one who sells it outside.

As to the last point of objection made, it is claimed by counsel for the city that the denial of the right to sell vegetables and fruit in a stall in a market-house is not by virtue of the ordinance in question, but by virtue of the following ordinances: "All the inner portion of all market-houses shall be and are hereby set apart for butchers' stalls, but when not needed for this purpose may be used, under the direction of the comptroller, for the sale of fresh, smoked, or salted meats, bacon, ham, sausages, dressed fowls, and all other kinds of provisions or goods except fish." "Any stand or stall outside of any market-house may be used or employed for the sale of poultry, game, vegetables, fruits, coffee, or other articles except fresh meat." It would, therefore, seem that the interdiction of the sale of vegetables and fruits in the market comes from the

ordinance above quoted, and not from the ordinance in question. The ordinance in this case defines a meat-shop keeper to be any person who shall offer for sale in any market, stall, place, or shop in the city, whether sold or not, any kind of fresh and salt meat, fresh and salt fish, sausage and sausage-meat, whether made by him or not, and also all kinds of fowls and game in their proper seasons that is not prohibited being sold or offered for sale by any law of the state, or any ordinance of the city, in large or small quantities. Such a person, when he obtains his license, is authorized to sell for one year any or all of the above-named articles, and in addition thereto, vegetables and fruits. This authority is given to all meat-shop keepers who procure license. A meat-shop keeper who sells his meat at a stall in the market is not forbidden by anything contained in the ordinance in question from selling vegetables and fruits, and if forbidden to do so, it is by virtue of other and distinct ordinances of the city above referred to. The ordinance does not require that meat-shops shall be located inside a market, and it is optional with the meat-shop keeper to sell his meat inside or outside the market-house, and if he choose to sell inside a market, he voluntarily subjects himself to the rules and regulations governing market-houses, and if a discrimination is thus created, it is not by virtue of the ordinance in question.

The judgment is hereby affirmed. All concur.